IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY LYNN DRIVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | CASE NO. 3:13-0364 |
| ) | JUDGE TRAUGER/KNOWLES |
| ) | |
| ) | |
| PAUL ALEXANDER, M.D. and ) | |
| CORIZON MEDICAL SERVICES, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

This matter is before the Court upon the pro se prisoner Plaintiff's "Motion for Temporary Injunction." Docket No. 26. With the Motion, Plaintiff has submitted a "Sworn Declaration." Docket No. 26-2.

Plaintiff's basic claims are that he has Cirrhosis of the liver. A former physician Defendant in this action told him that the Cirrhosis "would eventually turn to liver cancer and [he] would die if [he] wasn't treated." Docket No. 1, p. 1. He was treated with Ribavirin and Interferon for some period of time, but after those treatments were stopped, he developed Cirrhosis of the liver. He was told by Defendant Dr. Alexander in February 2013 that the Interferon and Ribavirin shots "cost too much money and the company would not pay for the booster shots." *Id.*, p. 2. A nurse practitioner told him that he could not take Tylenol because it would kill him. He had been taking Tramadol, but that medication was changed to Tylenol after he filed the Complaint in the instant action. He contends that the medicine change was in

retaliation for his exercising his constitutional rights and that, on June 4, 2013, "Dr. Alexander admitted that he knew that Tylenol would cause [him] irreparable injury and harm, and that [he] could die from ingesting it for pain . . . ." *Id.*, p. 3.

The Defendants Dr. Alexander and Corizon, Inc. have filed a Response in opposition to the Motion.[1] Docket No. 37. Defendants' Response is accompanied by the Declaration of Dr. Alexander. Docket No. 37-2. That Declaration establishes in relevant part as follows.

Defendant Alexander is a medical doctor licensed in the State of Tennessee. He has worked for Correctional Medical Services, First Medical Management, and Corizon in various roles from 2003 to the present. Currently he is employed by Corizon as the Medical Director of Riverbend Maximum Security Institution ("RMSI"), where Plaintiff is housed.

He first saw Plaintiff in the Chronic Care Clinic at RMSI in or about April 2012 for care and treatment of his Hepatitis C, with Cirrhosis and hiatal hernia. He has provided ongoing care to Plaintiff since that time. He is familiar with Plaintiff's care and treatment concerning his Hepatitis C and his medications.

From February to May 2007,[2] Plaintiff was treated by a physician at Meharry for Hepatitis C, which had been diagnosed two to three years earlier. During his treatment with Interferon and Ribavirin, Plaintiff suffered significant side effects, which caused the Meharry physician to determine that retreatment of the Hepatitis C was "not worth the risks."

---

[1] Additionally, Defendant FCM-MTC Medical, LLC d/b/a First Medical Management has filed a Response stating that it no longer provides medical care to the institution in which Plaintiff is incarcerated. Docket No. 35.

[2] This apparently is a typographical error, and should be 2008, as Plaintiff was not referred to the physician until February 20, 2008.

Because Plaintiff has had chronic pain from his condition, he had been prescribed Tramadol, a pain medication, since approximately 2008. Dr. Alexander is unaware of any order or recommendation by the Meharry physician prohibiting the prescription of Tylenol. Even if there were such an order or recommendation, Dr. Alexander may exercise his own judgment and prescribe medications for his patients in accordance with the recognized standard of acceptable professional practice in the year 2013 for an internist practicing correctional medicine in Nashville, Tennessee.

At the end of May 2013, Dr. Alexander consulted with the Regional Medical Director, who recommended discontinuing Tramadol and possibly considering referral to a pain clinic given Plaintiff's long-standing use of that medication. On May 30, 2013, Dr. Alexander prescribed Tylenol #3, 30 milligrams, to be given three times a day for a period of 30 days. Tylenol #3 contains 325 milligrams of Acetaminophen and 30 milligrams of Codeine. The applicable standard of care for an internist practicing correctional medicine in 2013, treating a patient like Plaintiff who has Hepatitis C, is to prescribe less than 4000 milligrams of Acetaminophen daily. Prescribing above that threshold might pose a risk of injury to Plaintiff. The prescription to Plaintiff was for the medication to be taken on an as-needed basis. Thus, even if Plaintiff consumed a maximum dose of Tylenol #3, he would receive only 975 milligrams of Acetaminophen, which is less than that considered potentially harmful.

If Dr. Alexander had thought the prescription would be harmful to Plaintiff, he never would have prescribed it. The prescription, however, is consistent with the recognized standard of acceptable professional practice for an intern practicing in the same or similar community treating a patient like Plaintiff.

Routine blood work will be done to monitor Plaintiff's liver enzyme levels. If those levels were to become elevated, Dr. Alexander would discontinue the medication.

Finally, Plaintiff has not suffered any injury to his health condition as a result of taking the Tylenol. With a reasonable degree of medical certainty, Dr. Alexander believes it is unlikely that Plaintiff will suffer liver damage, cancer, or death caused by taking Tylenol #3 at the dose that he has prescribed.

In analyzing Plaintiff's request for injunctive relief, the Court must consider four factors:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted).

The District Court, however, is not required to make specific findings concerning each of these factors. *Id.*

The Declaration of Defendant Dr. Alexander shows that Plaintiff does not have a strong likelihood of success on the merits. Additionally, the Declaration of Dr. Alexander shows that, to a reasonable degree of medical certainty, it is unlikely that Plaintiff will suffer liver damage, cancer, or death caused by taking Tylenol #3 at the prescribed dosage.

Given the foregoing, it is very clear that Plaintiff is not entitled to a temporary or preliminary injunction. For those reasons, the instant Motion (Docket No. 26) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

4

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge