IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JERRY LYNN DRIVER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:13-cv-364 |
| DR. PAUL ALEXANDER *et al.*, | ) ) | Judge Trauger |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Before the court is the plaintiff's Objection to Magistrate Judge's Report and Recommendation (ECF No. 57). In the Report and Recommendation ("R&R") (ECF No. 40), Magistrate Judge Cliff Knowles recommends denying the plaintiff's Motion for Temporary Injunction (ECF No. 26). For the reasons set forth herein, the court will overrule the objections, adopt the R&R, and deny the plaintiff's motion.

**I.  STANDARD OF REVIEW**

When a magistrate judge issues a recommendation on a motion for injunctive relief, the district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(B). *See also* Fed. R. Civ. P. 72(b) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.").

An objection is "properly" made if it is sufficiently specific to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jerry Lynn Driver, a state prisoner presently housed at Riverbend Maximum Security Institution ("RMIS") who proceeds *pro se*, filed the complaint in this action under 42 U.S.C. § 1983. On initial review, the court permitted the plaintiff's claims to proceed against defendants Dr. Paul Alexander,

Corizon, Inc.,[1] and First Medical Management based on allegations that these defendants had been and continued to be deliberately indifferent to the plaintiff's serious medical needs, in violation of his Eighth Amendment rights, by knowingly refusing to provide necessary treatment for the plaintiff's Hepatitis C due to the cost. (*See* May 1, 2013 Memorandum Opinion and Order (ECF Nos. 3 and 4).) The plaintiff seeks monetary and injunctive relief in the form of an order that he receive treatment for his Hepatitis C.

On June 12, 2013, the plaintiff filed his motion for a preliminary injunction (ECF No. 26) to prohibit the defendants "from prescribing or giving Jerry L. Driver any and all pain medications that contain Tylenol[2] or other NSAIDS as a pain medication." (ECF No. 26, at 1.) In support of his motion, the plaintiff asserts either in the body of his motion or in his supporting declaration (ECF No. 26-2) that he was diagnosed with cirrhosis of the liver in 2009 and was told at the time that he needed to be careful in taking any kind of medication; and that Nurse Practitioner Lisa Jack told him in February 2013 that he "could not take any NSAIDS including Tylenol because they would kill" him. (EF No. 26, at 2, ¶ 7.) The plaintiff alleges that Dr. Alexander stopped prescribing Tramadol, the pain medication the had been taking for more than two years, and instead prescribed Tylenol 3, containing acetaminophen with codeine, on or around May 30, 2013. The plaintiff alleges that Dr. Alexander had previously told him during a chronic-care visit in February 2013 that he should not take acetaminophen, ibuprofen, or certain other medications because they were harmful to his liver (ECF No. 26-2, ¶ 5), and that taking such medications "would cause [him] to die." (ECF No. 26, at 2, ¶ 8.) The plaintiff also asserts that Dr. Rao, a gastroenterologist at Nashville Metropolitan General Hospital, "placed an order in [the plaintiff's] medical records that [he] should not take any Tylenol, and that it could cause [him] to bleed from the liver and die." (ECF No. 26-2, ¶ 3.) Another physician, an "unknown Rheumatologist" prescribed Tramadol in 2009, telling the plaintiff that he could not take acetaminophen. (*Id.* ¶ 6.)

The plaintiff alleges that his pain medication was changed in retaliation for his having filed this lawsuit (ECF No. 26, at 3, ¶ 9), and for the purpose of saving money. (ECF No. 26-2, ¶ 8.) The plaintiff also claims that on June 4, 2013, Dr. Alexander "admitted that he knew that Tylenol would cause [him]

---

[1] This defendant was improperly named in the complaint as "Corizon Medical Services."

[2] Tylenol is the best-known brand name for the medication whose generic name is acetaminophen. The terms Tylenol and acetaminophen are used basically interchangeably in this opinion.

irreparable injury and harm, and that [he] could die from ingesting it for pain, and that it is contraindicated for [him], because [he] had hepatitis C., cirrhosis of the liver and possibly liver cancer and could die from taking it." (ECF No. 26, at 3, ¶ 11.) The plaintiff further alleges that, unless restrained by the court, the defendants will "continue to retaliate" against the plaintiff by prescribing medications that will exacerbate his liver condition, and that the plaintiff will suffer immediate and irreparable injury and loss of life. (*Id.* at 3.)

The defendants filed a response in opposition to this motion (ECF No. 37), supported by the declaration of Dr. Paul Alexander (ECF No. 37-2), in which they object generally that (1) the preliminary-inunction motion has no nexus to the merits of the suit concerning the defendants' alleged deliberate indifference in failing to treat the plaintiff's Hepatitis C;[3] (2) the plaintiff's motion is supported only by inadmissible hearsay, including the alleged statements by an unnamed rheumatologist and by Dr. Rao; and (3) the plaintiff has not shown a strong or substantial likelihood of success on the merits and therefore is not entitled to a preliminary injunction.

In his declaration, Dr. Alexander states, in relevant part, that:

(1) He is a medical doctor who has worked in correctional healthcare for approximately 20 years, and he is currently employed by Corizon as the Medical Director of RMSI;

(2) He first saw the plaintiff in connection with treatment for his Hepatitis C and cirrhosis in April 2012, has provided ongoing care since that time, and is familiar with the plaintiff's care and treatment;

(3) The plaintiff's medical records reflect that he was referred to Dr. Babu Rao, a gastroenterologist, in February 2008 for the purpose of evaluating whether to retreat the plaintiff's Hepatitis C. Dr. Rao noted that the plaintiff had been diagnosed with Hepatitis C two or three years previously and had been treated with Interferon and Ribavirin from February to May 2007. These medications caused significant side effects in the plaintiff, including neutropenia (low white blood cell counts), anemia, thrombocytopenia (low platelet counts), shortness of breath, fatigue, and pancytopenia (low level of all blood cells). The medical note shows that Dr. Rao's impression, after examining the plaintiff and considering his medical history, was "Hepatitis C, genotype I with failed treatment secondary to side effects." (ECF No. 37-2, at 6.) His conclusion was that re-treatment was not "worth the risks." (*Id.* at 7.)

(4) The plaintiff had been prescribed Tramadol since 2008 to treat chronic pain associated with his liver condition;

(5) Dr. Alexander is "not aware of any Order or recommendation by Dr. Rao prohibiting

---

[3] Presumably in response to this argument, the plaintiff has now filed a motion to amend his complaint to add a claim pertaining to Dr. Alexander's discontinuing the plaintiff's Tramadol and prescribing Tylenol 3 instead. (ECF No. 59.)

the prescription of Tylenol," and even if he were, Dr. Alexander, "as a licensed physician, may exercise [his] own judgment and prescribe medications . . . in accordance with the recognized standard of acceptable professional practice in the year 2013 for an internist practicing correctional medicine in Nashville, Tennessee." (ECF No. 37-2, ¶ 7.)

(6) Dr. Alexander consulted with the Regional Medical Director regarding the plaintiff's long-term use of Tramadol. The Regional Director recommended discontinuing Tramadol and considering a referral to a pain specialist;

(7) Dr. Alexander prescribed Tylenol #3, three times a day, on May 30, 2013. According to Dr. Alexander, each Tylenol #3 tablet contains 325 milligrams of acetaminophen and 30 milligrams of codeine. Three tablets per day adds up to 975 milligrams of acetaminophen per day, which is less than the maximum recommended dosage of 4000 milligrams per day and does not pose a risk of increased liver damage to the plaintiff;

(8) Dr. Alexander avers that, if he thought Tylenol #3 would be harmful to the plaintiff, he would not have prescribed it and that, "[b]ased on [his] background, training, and experience, [his] prescription is consistent with the recognized standard of acceptable practice for an internist practicing in the same or similar community treating a patient like Mr. Driver" (ECF No. 37-2, ¶ 11);

(9) Dr. Alexander represents that his plan all along was to monitor the plaintiff's liver enzyme levels and to change or discontinue the medication if the levels became elevated;

(10) According to Dr. Alexander, the plaintiff has not suffered any injury or exacerbation of his health problems resulting from having been placed on Tylenol #3, and he is unlikely to suffer liver damage, cancer or death from taking Tylenol #3 at the prescribed dosage.

(See generally Alexander Decl., ECF No. 37-2.)

On July 2, 2013, Magistrate Judge Knowles entered the R&R (ECF No. 40) recommending that the plaintiff's motion for a preliminary injunction be denied. The magistrate judge reached that recommendation after first articulating the standard of review that applies to requests for preliminary injunctive relief and finding, based primarily on the information in Dr. Alexander's declaration, that the plaintiff did not have a strong likelihood of success on the merits and had not shown that he would suffer irreparable harm without the injunction. (*Id.* at 4.)

In his Objection to the R&R, the plaintiff insists that Dr. Alexander has provided "misleading" information in his declaration. (ECF No. 57, ¶ 1.) Specifically, the plaintiff takes issue with Dr. Alexander's statement that the standard of care in this locale allows him to prescribe a maximum of 4,000 milligrams of acetaminophen per day to a patient suffering from Hepatitis C. The plaintiff believes that the maximum dose for a patient with a healthy liver is different from that of someone like the plaintiff who suffers from liver disease, but Dr. Alexander's declaration fails to make that distinction. The plaintiff states even more specifically that paragraph 10 of Dr. Alexander's declaration refers to the "standard of care for an internist

. . . treating a patient like Mr. Driver who has Hepatitis C," but does not address the standard of care for someone who has actual cirrhosis of the liver in addition to Hepatitis C. (*See* Alexander Decl. (ECF No. 37-2) ¶ 10; Pl.'s Objection (ECF No. 57) ¶ 3.) The plaintiff asserts that Dr. Alexander's declaration is therefore "deficient" and "in bad faith." (ECF No. 57, ¶ 3.) The plaintiff also points out that Dr. Alexander's statement regarding the standard of care does not address the cumulative effect of treating the plaintiff with acetaminophen for 60 or more days.

Second, the plaintiff insists that his medical record at RMSI has been "stripped of vital information" and has decreased in size from what it used to be.

The plaintiff asserts he was told by nurse practitioner Lisa Jack that he should not take acetaminophen, and that he has been "warned . . . about medications" generally by two physicians and another nurse practitioner. The plaintiff attaches as an exhibit a medical note from Dr. Sator dated June 2009 informing the plaintiff that treating the plaintiff's joint pain and other pain was difficult "because of the condition of your liver. . . . The problem is morphine and other strong narcotics are contraindicated with your liver disease. You just have to understand that with your bad liver disease there is not much we can give you. You are on Tramadol now and so far the liver function tests are still ok. . . ." (ECF No. 57-5, at 1.)

The plaintiff also relies on and cites heavily from the case of *Chess v. Dovey*, No. CIV S-07-1767 LKK DAD P, 2011 WL 567375 (E.D. Cal. Feb. 11, 2011), in which the district court denied summary judgment to the defendants on the plaintiff's claim that the defendants had been deliberately indifferent to the plaintiff's serious medical needs by prescribing pain medication that was ineffective and harmed his liver. The plaintiff states that he understands this court is not bound by *Chess*, but respectfully requests that the court consider the similarities between his situation and that of the plaintiff in *Chess*, and to consider that case in making its decision.

The plaintiff states that he has "submitted a sworn declaration before this Court attesting to the yellow spots that are appearing over his entire body in increasing frequency since his daily ingesting of Tylenol 3 with codeine for the past sixty (60) days straight. Plaintiff is in constant pain from his cirrhosis and has no other option than to ingest Tylenol 3 with codeine." (ECF No. 57, ¶ 11.) In fact, the plaintiff has not submitted any such declaration, but his Objection is sworn under penalty of perjury, and he also

stated in his sworn Motion for Leave to File a Supplemental Complaint that, within two weeks of being prescribed Tylenol 3, "Plaintiff broke out in red spots that turned yellow, then became brown in a matter of a week," and that nurses and "other health care providers" have told the plaintiff that these spots are "an indication that his liver problems had worsened because of hi[s] ingesting Tylenol with cirrhosis of the liver and that he should not be on Tylenol." (ECF No. 59, ¶¶ 6–7; *see also* ECF No. 57, ¶ 11.) The plaintiff further asserts that his "laboratory tests also establish[] that his liver disease has progressed and is progressing since he was prescribed Tylenol" (ECF No. 57, ¶ 11), but he has not provided copies of laboratory test results.

Finally, the plaintiff also attaches to his Objection unverified print-outs from various websites, including documentation from the Mayo Clinic that suggests that taking over-the-counter pain relievers, including acetaminophen, may increase the risk of toxic hepatitis, especially if taken frequently or combined with alcohol (ECF Nos. 57-6, at 1; 57-8, at 1); a press release from the American Liver Foundation from 2006 that recommends that people, even those with healthy livers, not exceed a dose of 3000 milligrams of acetaminophen per day because of the risk of liver damage, and that persons with liver disease should check with their physician or hepatologist before taking acetaminophen at all (ECF No. 57-12, at 1); and a 2007 statement by the American Liver Foundation regarding nonalcoholic fatty liver disease and nonalcoholic steatohepatitis indicating (among other things) that, "[c]ontrary to popular belief, taking acetaminophen (Tylenol) is fine as long as its daily dose does not exceed 2-3 grams [2000–3000 milligrams] (4–6 tablets of extra-strength Tylenol)." (ECF No. 57-15.)

In their response to the Objection, the defendants argue primarily that the plaintiff, in lieu of specific objections, "merely submitted supplemental evidence, previously available to him and absent any compelling reasons" for not submitting it sooner (ECF No. 66, at 3); that the new evidence, in particular the internet print-outs, consists of inadmissible hearsay; that the plaintiff's reliance on *Chess v. Dovey* is misplaced; and that the plaintiff has failed to present any argument suggesting that Magistrate Judge Knowles' factual and legal findings are erroneous or contrary to law.

### III. DISCUSSION

"In evaluating a request for a preliminary injunction, a district court should consider: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a

preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.* (In re *Eagle-Picher Indus., Inc.*), 963 F.2d 855, 858 (6th Cir. 1992)). The four factors are not prerequisites or rigid requirements; instead, they are meant to "guide the discretion of the court." *Id.* (quoting *Am. Imaging Servs.*, 963 F.3d at 859). A preliminary injunction is an extraordinary remedy, and the party seeking the injunction bears the burden of justifying such relief. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974).

The court finds that the vast majority of "evidence" the plaintiff has presented in support of his motion would not be admissible at trial and may not be taken into consideration for purposes of the plaintiff's motion for a preliminary injunction. Specifically, the alleged statements by non-Corizon medical practitioners[4] and the internet print-outs from such sources as the Mayo Clinic and the American Liver Foundation[5] are hearsay that is not subject to any exception recognized by the Federal Rules of Evidence and are therefore inadmissible. Fed. R. Evid. 802.

Excluding that information, essentially the only evidence in the plaintiff's possession is his own opinion that acetaminophen, at the level prescribed to him (maximum 975 milligrams per day), is causing harm to his liver; the plaintiff's statement that his skin has developed spots that were first red before turning yellow and then brown; the plaintiff's claim that he has been told by Corizon health practitioners other than Dr. Alexander that these spots are indicative of declining liver function; and his unsupported assertion that laboratory tests suggest a decline in liver function since he has been on Tylenol 3. In the face of this meager evidence, the defendants have offered the declaration of Dr. Alexander, who declares under penalty of perjury that he is a medical professional who is familiar with the standard of care in this area and familiar specifically with the plaintiff's condition, care and treatment; that the level of

---

[4] The alleged statements by Dr. Sator and nurse practitioner Lisa Jack, formerly or currently employed by Corizon, Inc., arguably are statements by agents or employees of a party within the scope of their employment, during the employment, that do not qualify as hearsay. Fed. R. Evid. 801(d)(2).

[5] The court observes that, even if the American Liver Foundation print-outs and other internet documents offered by the plaintiff could be considered, these documents do not support the plaintiff's claim that acetaminophen, at the dose level currently prescribed (975 milligrams per day) is contra-indicated for someone with liver disease.

acetaminophen prescribed to the plaintiff is unlikely to harm the plaintiff; that the plaintiff has not been harmed by the prescription; and that Dr. Alexander intends to monitor the plaintiff's liver enzymes to ensure that the medication has not begun to have an adverse effect on him.

With respect to the plaintiff's specific objection that Dr. Alexander is misleading the court and that he does not address the question of the proper dosage of acetaminophen for a person like plaintiff who has both Hepatitis C and cirrhosis, Dr. Alexander does address the treatment of "a patient like Mr. Driver," and also indicates that Mr. Driver has both Hepatitis C and cirrhosis, and further affirms that "if [he] though this prescription was harmful to Mr. Driver, [he] would never have prescribed it." (ECF No. 37-2, at ¶¶ 4, 10, 11.)

The plaintiff also claims, however, that he has spots on his skin that other medical practitioners at Corizon attribute to his taking acetaminophen, and that Nurse Practitioner Lisa Jack has told him he should not be taking acetaminophen. The court finds that, even assuming the truth of these statements in conjunction with the purported deficiencies in Dr. Alexander's declaration, this evidence taken as a whole is not sufficient to establish a substantial likelihood of success on the merits as to this issue, or to establish that a failure to issue a preliminary injunction is likely to result in irreparable harm to the plaintiff.

The court cannot much weight to the plaintiff's assertion that recent laboratory tests show his liver disease has advanced since the plaintiff began taking acetaminophen, particularly in the absence of actual documentary evidence to support the statement and in light of the fact that the plaintiff is not a medical practitioner qualified to interpret the results of his laboratory results. Moreover, even if the statement is true, it presumably will be taken into account by Dr. Alexander, who states his intention to monitor the plaintiff's liver enzymes and to adjust his medication if necessary.

The plaintiff's assertion that his medical record has been "stripped of vital information" is conclusory and speculative. The plaintiff does not indicate what information he believes is missing or how he might be harmed by the missing records.

Finally, the court finds that the plaintiff's reliance on *Chess v. Dovey* is misplaced. In *Chess*, the plaintiff, like the plaintiff here, had Hepatitis C along with a number of other medical conditions. The defendants moved for summary judgment as to all the plaintiff's claims, including his claim that the defendants had been deliberately indifferent to his serious medical needs insofar as they prescribed him

pain medication that was ineffective and that they knew was harmful to his liver. The defendants conceded that the plaintiff had been on methadone for a number of years, which was deemed not harmful to his liver. The plaintiff was taken off this medication when he was moved to a prison facility that had in place a policy of not prescribing methadone to prisoners housed with the general prison population. In other words, the decision to stop methadone was based on a general prison policy and not on a medical finding as to what treatment was appropriate for the plaintiff's specific needs. The defendants argued only that they had offered other medications, including Tylenol, Naproxen, aspirin, and Neurontin/Gabapentin, but the plaintiff contended that these medications were not effective at treating his pain. The plaintiff also claimed these medications were "antagonists to the liver" and did "nothing but worsen his condition." *Chess*, 2011 WL 567375, at *19. The court noted that the plaintiff specifically alleged that the defendants prescribed him Tylenol and NSAIDs, knowing that these medications were harmful to his liver and despite the plaintiff's request that he be provided medications that would not harm his liver.

The court denied summary judgment to the defendants on the issue of whether they had been deliberately indifferent in that regard, principally because the defendants failed to present any evidence regarding or even addressing the plaintiff's assertions that "(1) the medications the defendants prescribed were harmful to his liver; and (2) that the defendants were aware these medications were harmful to plaintiff's liver but prescribed them anyways." *Id.* at *22. The court took note of the plaintiff's assertion that laboratory tests established that his liver disease had progressed since his arrival at the prison where his claim arose, and also considered copies of two documents from the "Hepatitis C Awareness Project" that the plaintiff submitted as exhibits to his response in opposition to the motion for summary judgment. These documents indicated that methadone does not adversely affect the liver and that "individuals with liver disease should avoid using . . . NSAIDs" including aspirin and Naproxen, and that "caution should be taken with respect to the use of Tylenol and niacin, in high doses for patients with liver disease." *Id.* at *23.

To be clear, the court did not make a finding that giving acetaminophen or over-the-counter NSAIDs to a prisoner-plaintiff with liver disease constitutes deliberate indifference to his serious medical needs. Rather, the court denied summary judgment to the defendants as to that claim because the defendants utterly failed to address it with evidence of their own. *See id.* ("Therefore, the court finds that

the defendants have not borne their initial responsibility of demonstrating that there is no genuine issue of material fact with respect to this claim."). [6]

Mr. Driver's case is in a procedurally different posture: He brings a motion for a preliminary injunction. Unlike the plaintiff in *Chess*, he is not simply in the position of defending against a motion for summary judgment. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. . . ." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). And, unlike in *Chess*, the defendants here have presented competent medical proof that strongly suggests that Mr. Driver will have difficulty succeeding on the merits on his claims and that he will not suffer irreparable harm in the absence of an injunction.

The court concludes by observing that the denial of a motion for a preliminary injunction is not dispositive of the question of whether the moving party will ultimately be entitled to an injunction. Rather, the denial returns to the plaintiff the burden of putting on proof to establish his case. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("Accordingly, a party 'is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits.'" (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

## IV. CONCLUSION

For the reasons set forth herein, the plaintiff's individual objections will be overruled, the July 2, 2013 R&R will be approved, and the plaintiff's motion for a preliminary injunction will be denied. An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge

---

[6] The other cases attached to the plaintiff's Objection are not remotely relevant and do not warrant discussion.