**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JERRY LYNN DRIVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:13-cv-00364** |
| **v.** | ) | **Judge Trauger / Knowles** |
| | ) | **Jury Demand** |
| **DR. PAUL ALEXANDER, et. al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

<u>**I. Introduction and Background**</u>

This matter is before the Court upon two Motions for Summary Judgment filed by the

remaining Defendants in this action: the first, filed by Defendant FCM-MTC Medical, LLC d/b/a

First Medical Management ("First Medical") (Docket No. 132); and the second, filed by

Defendants Paul Alexander, M.D. and Corizon, Inc. ("Dr. Alexander" or "Corizon") (Docket No.

137).  Along with its Motion, Defendant First Medical has filed a supporting Memorandum of

Law, a Statement of Undisputed Material Facts, the Affidavit of Marjorie Brown, and Plaintiff's

Medical Records from the Riverbend Maximum Security Institute Clinic.  Docket Nos. 133 -

136-4.  Along with their Motion, Defendants Dr. Alexander and Corizon have filed a supporting

Memorandum of Law, a Statement of Additional Undisputed Material Facts, and two

Declarations from Dr. Alexander.  Docket Nos. 137-140; 37-2.  Defendants Dr. Alexander and

Corizon also incorporate First Medical's Motion and supporting materials.  *See* Docket No. 137.

After Defendants filed the instant Motions to Dismiss, Plaintiff filed a letter, which states

in its entirety as follows:

> I do not know any thing about the law or what to do about this
> paper work I received in mail from Court I barely can see I dont
> now what to do the Law Clerk I hade working on my case gite out
> went home I hade a inmate to reed the papper to me the Court says
> somt about exibts for trial wittness I not been able to get any of my
> medical records yeat I am real confused I dont know what to do or
> how to do this I cant find a inmate law Clerk that can help me at
> time all I now is I am on heavy pain meds un able to see or now
> how to do the papper work I reail sick dying with liver foler with
> seriouse of liver I have tride to get legal help but been un able to do
> so I so sick I just don't know what to do. I dont now how or what
> to do about the papper work I gite on order from Court.

Docket No. 144.

As can be seen, Plaintiff's letter does not address the contents of the instant Motions, and is not verified or in a form required by Fed. R. Civ. P. 56. Accordingly, Plaintiff has not responded to either Motion or Statement of Undisputed Material Facts, nor has Plaintiff filed his own Statement of Undisputed Facts.

Plaintiff filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. §1983, alleging that Defendants are being deliberately indifferent to his serious medical needs by providing him Tylenol #3 and morphine to treat his pain, rather than treating his Hepatitis C and Cirrhosis of the liver with "booster shots," Interferon, and Ribavirin. Docket No. 84, Amended Complaint. Plaintiff sues Defendants in their individual and official capacities, and seeks compensatory and punitive damages, as well as for "the defendants to treat me for hepatitis C like the gastroenterologist prescribed for me at the beginning of his diagnosis and treatments." *Id.* Plaintiff additionally seeks "an injunction that requires the defendants to treat [him] for medical problems, and not base treatments on costs simply because [he is] a prison inmate, and to stop treating [him] with Tylenol that is harmful and antagonistic to [his] liver." *Id.* Finally, Plaintiff

seeks "any other equitable relief that the Court may find just and proper, including medical diagnosis by an independent medical source other than one chosen by the known and unknown defendants." *Id.*

Defendant First Medical filed its instant Motion for Summary Judgment and supporting materials on July 29, 2014, arguing that it is entitled to a judgment as a matter of law as Plaintiff's claims against it are time-barred because: (1) Plaintiff's claims against it are for the cessation of interferon and ribavirin treatment in 2007-2008 and alleged denial of "booster shots" that Plaintiff believes would have permitted his treatment to continue; (2) it ceased providing medical services to Riverbend in 2009; (3) there is a one-year statute of limitations in § 1983 actions; and (4) Plaintiff filed this action in 2013. Docket Nos. 132, 133. Defendant First Medical argues that Plaintiff's claims related to any action/inaction taken after 2009 fail to state a claim upon which relief can be granted against it, since it stopped providing medical services at Riverbend in 2009. *Id.* Defendant First Medical additionally argues that, even if Plaintiff's claims were not time-barred, summary judgment remains appropriate because there is no evidence of an unconstitutional policy, practice, or custom executed by it, nor is there any evidence of it being deliberately indifferent to a serious medical need. *Id.*

Defendants Dr. Alexander and Corizon filed their Motion for Summary Judgment and supporting materials on August 6, 2014, incorporating by reference Defendant First Medical's Motion and supporting materials, and arguing that they are entitled to a judgment as a matter of law because: (1) Dr. Alexander rendered adequate and appropriate medical treatment to Plaintiff and therefore did not act with deliberate indifference; (2) Plaintiff has adduced no evidence in a form required by Fed. R. Civ. P. 56 to support his allegations that he suffered any of the

purported injuries, and his claims are unsupported by the evidence; (3) respondeat superior is not a basis for the imposition of liability under § 1983, so Plaintiff cannot sustain his claims against Corizon as Dr. Alexander's employer; (4) there is no evidence of any official Corizon policy, practice, or custom that caused Plaintiff injury; and (5) there is no casual connection between any official Corizon policy, practice, or custom and any alleged constitutional violation.  Docket Nos. 137, 138.

As noted, Plaintiff has not responded to either Motion.

For the reasons discussed below, the undersigned recommends that the instant Motions for Summary Judgment (Docket Nos. 132, 137) be GRANTED.

## II. Facts[1]

Plaintiff is an inmate of the Tennessee Department of Correction ("TDOC"), who has been housed at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee since 1985.  Docket Nos. 1, 84.

From February 2007 to May 2007, Plaintiff's Hepatitis C was treated with Interferon and Ribavirin.  Docket No. 37-2, First Declaration of Dr. Alexander ("First Alexander Dec."), ¶ 5; Docket No. 136-1, Plaintiff's medical records from the RMSI Clinic ("RMSI Medical Records"). Plaintiff suffered significant side effects including neutropenia, anemia, thrombocytopenia, shortness of breath, fatigue, and pancytopenia, with significantly low platelet counts.  *Id.*

On or about February 20, 2008, Plaintiff was referred to Babu Rao, M.D.  *Id.*  Following his examination, Dr. Rao opined that Plaintiff had Hepatitis C, genotype I, with failed treatment

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

secondary to side effects. *Id.* Re-treatment was not medically necessary and not recommended due to the risk of adverse reaction. *Id.* Dr. Rao did not issue an order or recommendation prohibiting the prescription of Tylenol. *Id.*, ¶ 7.

As of September 29, 2009, Plaintiff's liver enzymes were at a normal stage where treatment for Hepatitis C was not required. RMSI Medical Records; *see also* Docket No. 135-1, Affidavit of Marjorie Brown ("Brown Aff."), ¶ 5.

First Medical did not receive a request to resume medically necessary Interferon and Ribavirin treatment for Plaintiff in 2008 or 2009, and First Medical did not reject, deny, or otherwise fail to approve any necessary medical treatment for Plaintiff based on the cost of such treatment during the time when First Medical provided services to RMSI. Brown Aff., ¶ 6. The medical services contract between First Medical and RMSI ended on December 31, 2009, and First Medical ceased providing medical services to RMSI at that time. *Id.*, ¶ 4. First Medical has not provided medical services to RMSI since. *Id.*

Dr. Alexander first saw Plaintiff at RMSI in the Chronic Care Clinic on or about April 2012, for care and treatment of his Hepatitis C with Cirrhosis and hiatal hernia. First Alexander Dec., ¶ 4; Docket No. 140, Second Declaration of Dr. Alexander ("Second Alexander Dec."), ¶ 3. Dr. Alexander provided ongoing care to Plaintiff at RMSI from April 2012 until Dr. Alexander left RMSI to become the Medical Director for the DeBerry Special Needs Facility on or about July 17, 2013. *Id.*

Plaintiff was examined and treated on numerous occasions while at RMSI for his medical conditions. Second Alexander Dec., ¶ 6. Plaintiff had chronic pain from his condition, and he was prescribed Tramadol, a pain medication, from approximately 2008 through the end of May,

2013, when Dr. Alexander consulted with the Regional Medical Director who recommended discontinuing Tramadol and possibly referring Plaintiff to a pain clinic. First Alexander Dec., ¶¶ 6, 8, 9. On May 30, 2013, Dr. Alexander prescribed Tylenol #3, 30 milligrams to be given 3 times per day, as needed for pain for a period of 30 days. *Id.*, ¶ 9. Tylenol #3 contains 325 milligrams of Acetaminophen and 30 milligrams of Codeine. *Id.* The applicable standard of care for an internist practicing correctional medicine in 2013, treating a patient like Plaintiff who has Hepatitis C, is to prescribe less than 4000 milligrams of Acetaminophen daily. *Id.*, ¶ 10. Given as prescribed, the maximum Acetaminophen Plaintiff would receive on a daily basis would be 975 milligrams of Acetaminophen, less than that which is considered potentially harmful. *Id.* Plaintiff has not suffered any injury to his health condition as a result of taking the prescribed medication, and, within a reasonable degree of medical certainty, it is unlikely he will suffer liver damage, cancer, or death caused by taking Tylenol #3 at the dose which Dr. Alexander has prescribed. *Id.*, ¶ 13.

Plaintiff was appropriately treated, was given appropriate pain medication when medically indicated, and was never refused pain medication or treatment that was medically necessary. Second Alexander Dec., ¶ 6. Plaintiff was not denied adequate medical treatment for a chronic illness. *Id.*

The applicable standard of care for an internist practicing correctional medicine in 2013, treating a patient like Plaintiff who has Hepatitis C, genotype I, with failed treatment secondary to side effects does not require re-treatment of the Hepatitis C due to the risks. First Alexander Dec., ¶ 5; Second Alexander Dec., ¶ 4. In fact, as of July 17, 2013, re-treatment of Plaintiff for Hepatitis C and "booster shots" was medically contra-indicated and not medically necessary.

Second Alexander Dec., ¶ 4. Based on his background, training, and experience, Dr. Alexander's treatment of Plaintiff was consistent with the recognized standard of acceptable professional practice for a physician practicing in the same or similar community treating a patient like Plaintiff. *Id.*, ¶ 7.

Neither Corizon nor Dr. Alexander denied Plaintiff necessary medical treatment based on the cost of such treatment during the time that either Corizon or Dr. Alexander provided medical services to RMSI. Second Alexander Dec., ¶ 5. At no time was Dr. Alexander deliberately indifferent to any serious medical need of Plaintiff. *Id.*, ¶ 6.

The medical services contract between Corizon and TDOC ended on September 9, 2013. Second Alexander Dec., ¶ 3. Corizon ceased providing medical services for TDOC on September 9, 2013, and has not provided medical services since. *Id.*

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the pending Motions on July 29, 2014 and August 6, 2014. Docket Nos. 132, 137. Plaintiff has failed to respond to Defendants' Motions.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

     **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...

. . .

     **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant First Medical's Statement of Undisputed Facts (Docket No. 134) or Defendants Dr. Alexander and Corizon's Statement of Additional Undisputed Facts (Docket No. 139). Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motions solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its

burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to

summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

### 1.  Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.  *See* Docket Nos. 1, 84.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## 2. Eighth Amendment

### a. Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### b. Deliberate Indifference To Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their

response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing*

*Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

## C. The Case at Bar

As noted, Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs by providing him Tylenol #3 and morphine to treat his pain, rather than treating his Hepatitis C and Cirrhosis of the liver with "booster shots," Interferon, and Ribavirin. Docket No. 84, Amended Complaint. Plaintiff seeks, *inter alia*, "an injunction that requires the defendants to treat [him] for medical problems, and not base treatments on costs simply because [he is] a prison inmate, and to stop treating [him] with Tylenol that is harmful and antagonistic to [his] liver," as well as an order for "the defendants to treat [him] for hepatitis C like the gastroenterologist prescribed for [him] at the beginning of his diagnosis and treatments." *Id.*

Because it is undisputed that Plaintiff received medical treatment, this is not a case where medical care has been denied; rather, it is a case where Plaintiff disagrees with the treatment he received and therefore seeks compensation and alternative treatment. Such disagreements, however, are insufficient to state a constitutional violation, as the Eighth Amendment guarantees that a prisoner will receive adequate medical care, not the medical care of his choice. *See, e.g., Estelle,* 429 U.S. at 104, 97 S. Ct. at 291; *Dotson v. Correctional Medical Services*, 584 F. Supp.

2d 1063, 1068-69 (W.D. Tenn. 2008).

Moreover, Plaintiff's claims against First Medical are time-barred. The Supreme Court has held that the statue of limitations applicable to actions brought under § 1983 for civil rights or personal injury violations should be the state statute of limitations for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 380, 105 S.Ct. 1938. In Tennessee, the statute of limitations for actions brought under federal civil rights statutes or for personal injuries is one year. *See* T.C.A. § 28-3-104(a). It is undisputed that First Medical stopped providing medical services at RMSI on December 31, 2009 and has not provided medical services to RMSI since that time. Brown Aff., ¶ 4. Plaintiff did not file this action until April 2013, nearly 3 ½ years later. Docket No. 1. Plaintiff's claims against First Medical are untimely and cannot be sustained.

Next, it is undisputed that Plaintiff was appropriately treated, was given appropriate pain medication when medically indicated, was never refused pain medication or treatment that was medically necessary, and was not denied adequate medical treatment for a chronic illness. Second Alexander Dec., ¶ 6. It is further undisputed that Plaintiff received medical care that was consistent with the recognized standard of acceptable professional practice for a physician practicing in the same or similar community treating a patient like Plaintiff, and that neither First Medical, Corizon, nor Dr. Alexander denied Plaintiff necessary medical treatment based on the cost of such treatment. Brown Aff., ¶ 6; First Alexander Dec., ¶ 5; Second Alexander Dec., ¶¶ 4, 5, 6, 7. Moreover, it is undisputed that Plaintiff has not suffered any injury to his health condition as a result of taking the prescribed medication, and that, within a reasonable degree of medical certainty, it is unlikely he will suffer liver damage, cancer, or death caused by taking Tylenol #3 at the dose which Dr. Alexander has prescribed. First Alexander Dec., ¶ 13.

Additionally, with regard to Plaintiff's claims against Corizon, a private entity that contracts with the State to perform a traditional state function (such as Defendants Corizon) acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, Defendant Corizon is amenable to suit under § 1983.

Section 1983, however, does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). In order for Defendant Corizon to be held liable, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Plaintiff in the case at bar does not contend that any official Corizon policy, practice, or custom caused the alleged deprivation of his rights. Because Plaintiff does not allege, much less establish, that the alleged violations of his rights were caused by an official Corizon policy, custom, or usage, he cannot sustain his Corizon claim.

## IV. Conclusion

For the forgoing reasons, the undersigned finds that there is no genuine issue of material fact and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motions for Summary Judgment (Docket Nos. 132,

137) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge